All rise. Here ye, here ye, here ye, this Honorable Appellate Court of the Second District is back in session, pursuant to adjournment. The Honorable Michael J. Burke presiding. Please be seated. Your Honor, in the second case, do you want me to call? Excuse me. People v. Chai, on behalf of the affluent, Ms. Barbara R. Paschen, on behalf of the people, Mr. Edward R. Sanford. Thank you. Ms. Paschen, you may proceed. Good morning, Your Honors. I'm Barbara Paschen. I represent Mr. Chai. Excuse me. My client has raised three issues, the first of which is that he wasn't proved guilty of criminal trespass beyond a reasonable doubt for two reasons. One, he was not given notice by an occupier of the land as the statute requires. Well, he wasn't told by an occupier and he didn't get notice from any proper person. There were three witnesses who testified, two of whom were employees of the Secretary of State's office. One was the manager, certainly the supervisor for that day, who the basic, the answer that he gave to a leading question was that Mr. Chai was not welcome at the facility. Another employee who testified was a security officer and she also testified through a leading question that Mr. Chai was told not to come back. She didn't identify the person who told Mr. Chai. She didn't specify precisely what that person said. The third person who testified was Officer Kellef Fiori, who in terms of whether Mr. Chai received notice, one has to focus on the events of September 1st. If Officer Kellef Fiori was there, I think he was there, he testified at trial that he saw Officer Erickson tell Mr. Chai not to come back. Mr. Erickson did not testify. The hearsay statement that was made by Officer Kellef Fiori was not an exception to the hearsay rule. Is your contention that the police officer was not the owner or occupier of land? Yes, it is, Your Honor. And your contention also is that no one who was either the owner or occupier or an agent thereof testified that they gave Mr. Chai notice not to return ever again? Correct, Your Honor. I think possibly if there had been evidence that either Mr. Kellef Fiori or Ms. Ferguson had told the police to tell Mr. Chai not to come back, then they would have been agents. I think arguably that would have been appropriate notice, but there was no such testimony in this case. I think it was Officer McElroy who testified that Officer Erickson told the defendant not to come back, correct? Officer McElroy, yes, he did. But why wasn't that good notice not to come back from a police officer who was called to the scene of an altercation? Well, Officer McElroy was not the one who told Mr. Chai, so his statement about his brother officer was hearsay. Well, let's leave that aside. Let's just say that that was properly admitted evidence. Why wouldn't that be proper notice to the defendant that he wasn't to return? Because by saying he couldn't return, he may well have been have meant to say, leave today, don't come back today. Mr. Chai testified that he worked at a nearby restaurant and a policeman told him to go back to work. So because we don't have the witness there in the courtroom, there was no opportunity to go into precisely what Officer Erickson actually said to Mr. Chai. Now, Officer McElroy's testimony you said was hearsay. How is that being offered to prove the truth of the matter asserted? It's an element of the offense whether he was given notice. Right, it's notice. So, I mean, the words spoken are from Officer Erickson, the words are, don't you come back. Yes. So what's the truth of the matter asserted? The truth of don't you come back or whether he was given notice not to come back? Both, I think. By saying don't come back, he was given notice not to come back. Well, notice, when you put someone on notice through words, that's not hearsay because it's not being offered to prove the truth of the matter asserted. It's only being offered for the notice aspect that someone said something and I heard it. I put on notice that they said that. That's pretty classic non-hearsay, isn't it? Your Honor, no, I disagree. Especially given that the state's attorney in closing argument used Officer McElroy's testimony that his testimony proved that Mr. Chai received adequate notice. Right. So it was used as notice. Absolutely. It was used as notice. Right. Right, but what I'm saying, I mean, we kind of go around in circles here, but what I'm saying is. You didn't understand. Well, I mean, how is offering something to prove notice hearsay? How is that offering to prove the truth of the matter asserted? All that's being offered is to show the effect on the listener, that I received the notice, I heard it, I understood it, I should know it. Not necessarily that it's true or not. Well, for example, notice can be in writing. If Officer McElroy had said Officer Erickson handed him a written notice which says never come back. And here's a copy of the notice that I saw him give to Mr. Chai. Admissible? Pardon me? Admissible? Sure. It's a medical record. It's a record. It's evidence of notice. It's the notice. What difference does it make if it's in writing or oral? It doesn't make any difference. It's just that this, in this case, there wasn't written notice. The evidence was. Even if the police officer told him never to come back, unless there's evidence establishing some owner or occupier authorized the police officer to say that, it's an empty threat, is it not? Yes, sir. I agree with that. I think the only way it's arguable. Put another way, is there any authority that you're aware of that gives an officer the authority to, when not an owner or occupier of land, to tell people to stay off property? I did not find such a case. Thank you. Regarding Mr. Chai's understanding, the witnesses, in my personal opinion, were about 50-50 as to how well he spoke English. Some of the people said I spoke to him and I was able to communicate with him just fine. Ms. Ferguson said he said something and I don't even know whether he was speaking English or some other language. I think it's notable that at the emergency room, the doctors spoke to him initially in English and then reverted to a translator. I think basically what that shows is that Mr. Chai might know some English as long as it remains relatively simple. But when one gets into more complicated ideas or perhaps technical terms, he's not so easy with those concepts. A man who graduated from MIT? A man who graduated from MIT but worked at a Mr. Wok restaurant. Was that the owner of an institute of technology? I actually don't know, Your Honor. I think everyone assumed it was the Massachusetts Institute of Technology. Wasn't he also there to try to help people maneuver the trickiness of a Secretary of State office? That's my impression. And again, he had been through the process himself. He knew about the testing. I'm not saying he was completely unable to speak English at all. I'm just saying that, obviously, based on his own testimony, he was told to go away that day. He didn't understand that to me. You can never return. Also, on the 23rd of October, which is the date of this offense, no one stopped him from coming in. No one said, you're not allowed to come in here. You can't come in. He went in there and he did his business. He did everything he wanted to do up until the time that the clerk said, your wife can't take the test. And he got upset and he didn't understand why she couldn't take the test. So again, whether the clerk didn't tell him much or... You're not going to equate being able to understand why the Secretary of State does what it does with an ability to understand English. No, no, no. All I'm saying is that who knows what the clerk told him and who knows... I am saying that no one told him, you can't come in here. You have to leave. On October 23rd? On October 23rd. Didn't the defendant intimate a knowledge that he was not to return based upon the answers to the question, the answers to his own attorney's questions about why is it, I'm American, why is it that I don't have to... Why is it that I am not allowed to return, basically? He made three comments like that in the record in response to questions, basically indicating he knew he wasn't supposed to go back there, but he was questioning, at least in court, and the trial court relied on that in the motion to reconsider. He was questioning, why shouldn't I, why can't I go back there? I'm a citizen. Yes, I believe it's equally arguable that by the time he got to trial, he knew that they were saying he was not allowed to go there on September 23rd. But on September 23rd... You mean October? Excuse me, I beg your pardon. That doesn't prove that on October 23rd he understood he wasn't allowed to come back. That just means that by the time he got to trial, someone had explained to him what was going on. And the whole basis for his upset was that he didn't understand what was going on. So if anything, that supports his position that he did not understand that he wasn't allowed to return. You seem to be arguing 50-50, you said, about understanding English and the inferences of his trial testimony. We're looking at this through a prism of sufficiency of the evidence. Yes. Collins thing. Yes. I mean, you know, again, we've got to look at this with all the benefit toward the state at this point in time. And if there hadn't been a problem about the knowledge instruction, I would agree with Your Honors. Because whether his English was good enough for him to understand is certainly a fact question for the jury to decide. But the jury clearly didn't understand, much like Mr. Trey, what knowledge was. And sent a note to the jury, sent a note to the judge asking about knowledge. What's the definition of knowledge? Does this mean he had to know? I don't remember the exact words. That question wasn't answered. The instructions that were given to the jury at the close of the proofs did not contain a definition of knowledge either. Because every offense with which he was charged contained known elements. And yet there was no definition of knowledge. Even after the jury specifically asked for it. So I think in terms of what was clear to the jury, certainly knowledge was not one of those things. Also, the jury, there was a deadlock problem. The jury went in to deliberate. They came out ostensibly with a verdict. And when the jury was polled, one of the jurors said, no, this isn't my verdict. So the judge sent them back to continue to deliberate. They sent two more notes saying that they were deadlocked. There was a colloquy among the parties and the judge in which the judge gave them three options of what to do. The judge mentioned that he could give them a prim instruction. So clearly the judge knew that a prim instruction was at least possible. His second object was to give what he called a backup prim. And his third option was to tell them that they didn't have to bring verdicts. They didn't have to come to verdicts on every count. He told the parties that he didn't like that option. So both attorneys, the prosecutor and the defense attorney said, okay, judge, we pick number two. We'll go along with number two. The problem with number two is it kind of violated everything that the prim case talked about. The whole purpose of giving a prim instruction is to guide the jurors to know that on the one hand, they should discuss the issues and consider everybody's point of view, but not to abandon their own beliefs. Your argument on this issue as to the post prim instruction only applies in your brief to the criminal trespass to land conviction, correct? Yes. Yes. So you didn't raise this as it relates to the resisting conviction? I did not. Okay. Oh, I beg your pardon. Yes, I did. And the same thing, the jury is confused. What's the difference between resisting and obstructing? The judge himself said, I don't know. That's a different issue. That's the, I'm talking about the post prim 1.06 IPI civil issue. That issue you raised as it relates to the criminal trespass to land. Yes. Not the resisting. Yes. So, and then the knowledge issue you raised this to both. Yes, that's correct. How is knowledge not ordinarily defined as it relates to the resisting? I think some people find it very easy to comprehend and some people don't. And clearly this jury didn't. I think we can't speak in generalities when we have. Wasn't the jury's question tied to criminal trespass to land, though? Didn't the jury, when it asked, what does knowledge mean? And then it asked a follow-up question on that same note about, did he have to know he wasn't allowed to come back or something like that? If you'll excuse me, I have the note. I can give you copies if you like. No, that's fine. Just read it to me. The note says, what does knowingly mean? Does the defendant have to understand what was said to him? So that probably relates to the criminal trespass charge. Certainly, again, his problem with the police officers removing him from the facility was because he didn't understand why they were doing what they were doing. He thought he had a right to be there. People were hustling him out the door, and he didn't understand why. So I think that particular question could apply to both situations. And certainly the jurors didn't flag it. They didn't say it regarding this issue as opposed to another one. So, no. I have one question. Yes, sir. The state says on page 10 of its brief, Mr. Calafiore testified the defendant was not welcome at the facility after the September 1 incident. In addition, Ms. Ferguson testified very clearly the defendant was informed that he could not return to the Lombard DMV. I would like to say Secretary of State's office following the incident on September 1. I'm sorry, I can't hear you, Your Honor. Okay. In addition, Ms. Ferguson testified very clearly that defendant was informed that he could not return to the Lombard DMV following the incident on September 1. There was no objection either as to foundation or hearsay. Is not Ms. Ferguson's testimony and Mr. Calafiore's testimony sufficient to establish notice, regardless of whether or not the defendant understood what the notice meant? Absolutely not. Why? In terms of the statement, very clearly I disagree with that. It wasn't clear it was an answer to a leading question. Basically, the testimony came from the prosecutor, not from Ms. Ferguson. And Ms. Ferguson didn't say, well, the prosecutor didn't say, wasn't very clearly told him not to come. That was just the way my opponent wrote his brief. It was a question to Ms. Ferguson, was he not welcome or was he told not to come back? She said yes. So her testimony was yes. Similarly, Mr. Calafiore's was even more vague. He started to say that he was told, he talked to the police after the whole thing was over and a hearsay objection was sustained at that point. And then the prosecutor said, well, was he welcome to come back? And his answer was no. So was he welcome? Okay, there's a difference between welcome and banned. He, it could very well have meant don't come back today. So no, Your Honors, I don't think that either Calafiore or Ferguson would support notice at all. Thank you, Ms. Bastian. You will have time for a brief argument. Mr. Psaki, you may proceed. Good morning, Your Honors. Counsel. Good morning. May it please the Court. My name is Randy Peseneca and I have the privilege of arguing on behalf of the people of the state of Illinois in this matter. If I could just touch on three issues raised in the briefs real quickly. To pick up on the point you were just discussing, Justice McLaren, most of the testimony regarding defendant's notice not to come back came via unobjected to testimony. There was no hearsay objection. There was no leading question objection. And therefore, it got into the record. And therefore, it's not preserved. Now, in her reply brief, defendant attempts to raise plain error and ineffective assistance to counsel, but Rule 341H7 says defendant can't do that because points not raised in the opening brief are waived and shall not be raised in the reply brief. So the only way the issue is framed for Your Honors right now is whether or not this testimony was sufficient. It clearly got in the record. And so that's why you said points not raised in the opening brief are waived and shall not be raised in the reply brief. She did not raise ineffective assistance of counsel nor plain error with regard to this issue in her opening brief. And so... You know there's case law that says that the defendant is entitled to raise it in the reply brief. I don't believe that's the case, Your Honor. You don't think that's the law or you don't... No, I don't believe that's the law. I believe Supreme Court rules control this point. Well, I think in the past Justice Burke has corrected me. So I defer to Justice Burke's understanding of what the law is. You don't remember that? Even assuming that that may be the case, that she can argue ineffective assistance counsel or plain error, there's no real argument there. It's just the canon language on plain error and ineffective assistance counsel. But I'm digressing a bit here. What evidence shows? Justice McClain was asking a question about, of your opening, about the owner-occupier. And, you know, we got into a little calcul about whether the notice from a police officer is enough. First of all, is notice from a police officer enough in the absence of any evidence that the owner-occupier told the police officer? That's what I want. I don't believe there's any case law specifically on that. The case schedule that I cited in my brief would speak to the issue. I don't know if it would speak directly, but it does speak to the issue in that case. There was a bar fight. Bartender tried to get the fighting patrons out, couldn't do it, called the police. And then the police told the defendant not to come back. He came back anyway. And the question was whether or not notice from the police officer was sufficient under the statute since he wasn't the owner-occupier. In a technical sense, I don't think the defendant ever left the parking lot. So, number one, I'm not convinced that the term never, that he came back as opposed to never left. The latter might be more appropriate. And secondly, this, when he said don't come back, related to the day in question and requested him to leave then and now. And he didn't leave then and now. So it's not exactly factually similar to our situation. Well, I'm citing it for the proposition that notice from someone other than the owner-occupier is sufficient. The odd thing is that the owner also told him about the premises. The court specifically said it was not relying on that. If you look at the statute, it ignored that because the court said that the owner-occupier's admonition not to come back wasn't clear enough. So it only looked at the admonition from the police officers. Okay. But... Separate and apart from that, does that satisfy the statute? I mean, can a police officer, if you come to my house and I call the police and say, get this man off my property, and the police show up, I never talk to the police, the police say, never come back to this property again. You may be my brother-in-law or something. I don't know. So I may want you back there at some point in time in the future. But do the police have the authority under the statute that clearly says owner-occupier has to give notice? I mean, I understand your argument. If the owner-occupier goes to the police and says, tell him never to come back, that's one thing. But we have no evidence of that in this case. We have evidence that the police told the defendant, do not come back. Right. Under what authority? They didn't say, the police didn't say, you are forever banished. They didn't say, never come back. Let's just talk about the authority aspect first. I mean, is it enough for the police to do that without authority? They were given the authority by the DMV. And what's the evidence of that? Supervisor. He sat the defendant down. Forgive me. During the first incident, he called the police to have them deal with the situation. And when the police came, they escorted the defendant out. So a reasonable inference is that the supervisor told the police that he did not want the defendant to come back to the DMV. I mean, there's no direct testimony that he told the police, tell him never to come back. But he called the police to handle the problem, and the police handled the problem and told him not to come back. So the police didn't say never, didn't say you're forever banished. But in my mind, those are synonyms. Regarding his ability to understand his directive not to come back, Justice Burke, you cited the references to the record about how he answered the questions. He clearly understood he wasn't supposed to come back. He just didn't understand why. In addition, there's other references in the record by the trial court judge that the defendant clearly understood English. These are on pages 51 and 55. As Justice Jorgensen pointed out, the only reason he's at the DMV, or Secretary of State, I'm sorry, Your Honor, is to explain to his compatriots what's being told to them in English. I mean, he's there as a translator. So the idea that he doesn't understand English is kind of beyond the pale. If Your Honors don't have any other questions on this point. What about the instruction issues? I mean, given a post-prim civil instruction, how is that proper? Well, as I argued in my brief, I believe it's invited error. So it's immune from review by this court for that reason. Let's talk about ineffective assistance of counsel. Well, the only way under the prejudice problem of Strickland it could be ineffective assistance is if it invaded the province of the jury and coerced a verdict. We have a Supreme Court case law that says this very language does not do that, that it is not coercive, and that's prim itself. That's on page 76 through 77 of the prim opinion. It looked at this precise language and said it's not coercive. So even if ineffective assistance is brought before this court, you can't prove the prejudice problem of Strickland. You think even with the very unusual occurrence of bringing a jury out, you get to juror number seven, and they say, no, it's not my verdict. That fact plus the civil prim, you don't think there was any coercion there? Well, no, Your Honor, because the problem with the prim instructions is that the language that says the minority should defer to the majority, the he, the majority language, that language wasn't in this instruction. And that was the impetus behind prim, that you're compelling the minority jury members to divorce themselves of their own opinions and get in line with the majority. That language is not here at all. I mean, had that language been given, then, yes, Your Honor, that would be true. But that language wasn't in this instruction. This case is a little different than prim. Prim, the jury was brought out or sent a note or whatever, and the former person said, I think we can reach a verdict. This case, we had a verdict. As Justice Jorgensen said, one of the jurors repudiated the verdict. They go back. Then they send out not one, I think, but two notes saying they were deadlocked and they would not be able to reach a verdict. And then this instruction is given. You know, forgive me, Your Honor. I thought it was just the one note. Maybe I'm wrong. It's not the jury saying we might be able to reach a verdict. It's the jury saying we are hopelessly deadlocked. And then instead of giving prim, this court goes off and gives a civil post-prim instruction. So my question to you, and you indicated correctly that coercive instructions are per se prejudicial, and the case law has held that these are not per se prejudicial standing alone. I'm talking about the facts of this case. Isn't this similar to Robertson and Wilcox where the judge here, without saying so many words, you must reach a verdict? No. And I'd say no. Those are the very words that control in Robertson and Wilcox. You have to reach a verdict. I'm not going to let you be deadlocked. That didn't happen here. The instruction was, you know, you've heard the evidence. Any other jurors going to hear the same evidence? Please retire to deliberate. There's no demand of a verdict, and there's no heed the majority language in the instruction. I don't think they're remotely similar. And if there's no further questions on that point, on the knowledge instruction, I took pains, I think, Your Honor, in my brief, to show that this record is not nearly clear enough to address this issue. We have a random note in the common law record that opposing counsel read to Your Honor during her argument. We have no reference to it by name in the recorded proceedings. Everything was recorded. This is court smart, so it's not like it was done off the record. And no colloquy whatsoever about this note, even if it ever reached the trial court or the parties. So the record is not clear enough for Your Honor to address this issue. I mean, opposing counsel is free to try to obtain a bystander's report or a brief statement of facts to show that this note actually reached the judge. And the parties discussed it, but there's no indication at all. I mean, the opposing counsel didn't do that, and the people submit that there's no indication in the record that this was discussed at all. Was this note photocopied on the same piece of paper as the obstructing resisting? I believe that was a separate note. They're near each other in the record. I think I'm sure opposing counsel will correct me and reply, but I think it was recorded on one piece of paper in the common law record. This note is what does knowledge mean? And at the time that the court was discussing the obstructing versus resisting, didn't the court say something about two questions from the jury? Yes. About answering these two questions. These two questions, and that could be the obstructing resisting. He didn't give a clarifying instruction on that either. I don't know what he was referring to. The record doesn't tell us. And in those situations, you have to defer to the judgment of the court below. I mean, the record could have easily been clarified, but it wasn't. There are no further questions? Well, I just asked this, and that is, if we don't know, how are we deferring to anything? Well, you're deferring to the judgment, Your Honor. If the record is insufficient to allow this court to make an analysis of the issue, you have to affirm. I'll buy that answer. As a point of clarification, Justice McClaren has an excellent memory, because I do recall that since forfeiture can be forfeited by the state on appeal, the defendant actually does have the ability to raise plain error in a reply brief. Yes, but I am not forfeiting it. I'm just conceding the memory to my colleague here. Thank you, Your Honor. Ms. Passion. What about this record with the note? What does the record show about the note with the... I have copies, if Your Honor would like to see them. That one I might like to look at. Okay. We'll show counsel first. Thank you. On page 90 of the common law record, the jury asked about the question that the defendant refused to answer. What answer did he eventually give? In two paragraphs underneath that note, the judge tells the jury to continue to deliberate because they have all the evidence. And then it says, as to the following questions, you have all of the instructions in their case. Again, please continue to deliberate until you reach a verdict. The two following questions are the difference between obstruction and resisting, and what does knowingly mean? These were photocopied onto the same page, the two notes in the record. Yes, I downloaded this from the e-record, Your Honor. So, yes, the record could have been more clear, but I think this pretty much sums it up. As to the following questions, you have your instructions, and they didn't. And the following two instructions included the question about knowingly. Regarding waiver, the state has not cited any case law that requires me to argue my own waiver and or forfeiture. In a reply brief, one is allowed to reply to an argument that the state makes, and that was my reply. Your Honor, so I answered your own question about the police officer having authority. In the case cited by the prosecution, the bartender was there to testify in addition to the police officers. So not only did he himself have the authority to tell them not to come back, but he made the police agents of his to tell the guy not to come back in. So in that way also, the case cited by the state just isn't like ours. There is no evidence in this record that the supervisor, Mr. Calafiore, told the police to tell Mr. Chai not to come back. He certainly didn't say that himself. Regarding Mr. Chai's ability to speak English, there was a translator at this trial. And maybe I'm making assumptions, but I think it's reasonable to assume that if a judge makes a decision to appoint a translator, it's because the judge believes that a translator... And the defendant paid the translator himself. I think the judge has to allow the translator to be there. I think the judge has to swear the translator in. I think if the judge didn't want the translator to be there or if the judge thought the translator wasn't necessary, the judge... I'm not sure that that's what you said in there, Your Honor. Yes. Well, regardless, that's outside the record, right? Yes. In terms of invited error, I disagree that it was invited error. I think the judge... In the state's brief, he actually said that the prim instruction that was given originated with defense counsel, which it did not. The language that the judge gave in this case, the prim court said was incorrect, although it was a reversible error on its own. What was missing from this prim follow-up was guidance, especially in circumstances where they knew they had at least one juror who was a holdout, that on the one hand, you should listen to each other. On the other hand, you should not give up your strongly held beliefs. That wasn't there, and that's a very important omission. Quickly, in terms of knowledge, the coercion comes from an incorrect instruction that fails to have the jury understand how the law applies to the facts. That's what was coercive about it. The jury wasn't guided to understand what the law said about how they should apply that law to the facts. So we're asking for an outright reversal. In the alternative, we're asking for a new trial. Thank you, counsel. We'd like to thank both attorneys for their arguments today. The case will be taken under advisement in a short recess.